IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                    No. 13 CR 0663 MV

MATTHEW GROBSTEIN,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's *Motion for Rule 17(c) Subpoena to the Custodian of Records for Greyhound Lines, Inc.* (Doc. 34). The Court has considered the motion, briefs, and the relevant law, and being otherwise fully informed, **FINDS** that the motion shall be **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART** for the reasons stated herein.

### BACKGROUND

On March 5, 2013, the Grand Jury returned an indictment against Defendant, alleging that on February 21, 2013, he possessed with intent to distribute 50 grams and more of methamphetamine, contrary to 21 U.S.C. § 841(a)(1). According to Defendant, the charges arose from an incident in which he was traveling eastbound through Albuquerque on a Greyhound bus. DEA Special Agent Jarrell Perry approached Defendant after he boarded the bus following a one-hour layover in Albuquerque. Defendant contends that he did not freely or willingly give Agent Perry consent to search his person or his bag. Accordingly, he intends to file a motion to suppress the drug evidence. However, because Agent Perry's tape recorder was not turned on

during his interactions with Defendant, the Court must rely on witness testimony to resolve the question of whether or not Defendant gave Agent Perry valid consent to search.  Defendant anticipates that his and Agent Perry's versions of their encounter will differ vastly, and that the Court's resolution of the motion will hinge upon its credibility findings.  Therefore, Defendant aims to pursue "every available eye witness and/or electronic recording" of the encounter.  Doc. 34 at 3.  In his motion for a Rule 17(c) subpoena, Defendant requests the following items: (1) all surveillance video and audio recordings made from 6:00 p.m. until midnight on February 21, 2013 at the Greyhound bus station in Albuquerque, including the Greyhound offices, cleaning bays, bus parking areas, and passenger loading areas, as well as on-board video from the bus Defendant was riding prior to his arrest; and (2) the passenger manifest for the bus on which Defendant was a passenger, specifically the portion that would list the names and contact information of those passengers on board when the bus arrived in and departed from Albuquerque on February 21, 2013.

## APPLICABLE LAW

Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas in criminal cases.  Rule 17(c) sets forth the requirements for issuing a subpoena for the production of documents and objects, as opposed to a subpoena for the attendance of a witness.  The relevant text of the rule is as follows:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

FED. R. CRIM. P. 17(c)(1).

"Rule 17(c) reflects the command of the Sixth Amendment that the full power and processes of the courts are available to defendants in criminal cases to help them defend against the charges brought by the Government." *United States v. Beckford*, 964 F. Supp. 1010, 1016 (E.D. Va. 1997). However, the Rule's scope is limited, and its purpose is not to secure an additional means of discovery for criminal defendants. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). Accordingly, a defendant must demonstrate the following before a subpoena may issue:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974). In summary, the requested information must be relevant, admissible and specific. *See id.*; *Beckford*, 964 F. Supp. at 1016.

## DISCUSSION

Defendant argues that the recordings and manifest are necessary to his defense because they will enable the Court to determine the constitutionality of the stop and subsequent questioning Agent Perry conducted. Specifically, Defendant anticipates that he and Agent Perry will offer irreconcilable versions of the events that preceded his arrest, and the Court's resolution of his motion to suppress will hinge upon its credibility determination. Defendant argues that the audio and video evidence will support his contention that he did not voluntarily consent to the search, and the passenger manifest will lead to a list of potential eyewitnesses whose testimony will aid the Court in determining whether to believe the testimony of Defendant or Agent Perry.

The Government objects to Defendant's request for audio and video recordings as overbroad. As to the passenger manifest, the Government argues that it is inadmissible and

therefore not evidentiary. The Government further argues that the manifest should not be disclosed to Defendant as it contains the names and personal information of innocent passengers, who have a privacy interest in preventing the disclosure of this information to an alleged drug trafficker.

## I.     Audio and Video Recordings

In the instant case, Defendant states that Agent Perry's tape recorder was not turned on during his encounter with Defendant. Nonetheless, because the encounter occurred in a location that was under surveillance, Defendant believes that video and/or audio documentation exists depicting the events leading up to the search. The Government does not appear to object to Defendant's request for audio and video recordings insofar as his request pertains to the recordings taken on the bus on which Defendant was arrested. *See* Doc. 35 at 4 (suggesting that any on-board video that exists is relevant because it "depicts the encounter between Defendant and Special Agent Perry at issue in this case"). Rather, the Government argues that Defendant's request is overbroad, as it encompasses recordings of Greyhound cleaning bays, offices, and parking and loading areas.

As the Court will explain in Section II, "Passenger Manifest," *infra*, the requirement that the requested materials be evidentiary, as articulated by the Supreme Court in *Nixon*, *see* 418 U.S. at 699, may be relaxed in circumstances in which the items at issue are in the possession of a third party. Nonetheless, Defendant must at least explain how the items he requests are relevant – that is, how they "relate[] to the charges against him or how [they are] to be used in his defense." *United States v. Abdush-Shakur*, 465 F.3d 458, 468 (10th Cir. 2006). Defendant has failed to meet this burden with respect to his request for recordings of Greyhound cleaning bays, offices, and parking and loading areas. He states that the video and/or audio

4

documentation will be crucial to his defense because it will depict the encounter on the bus, and it could also reveal information concerning his awareness of the drugs in his luggage. This is true with respect to the recordings from the bus itself, but Defendant has failed to explain the relevance of the other recordings he requests. The Court will accordingly grant Defendant's request for a subpoena only for all on-board audio and/or video recordings from the eastbound Greyhound bus running route number 1342 during its layover in Albuquerque, which took place approximately between 9:25 and 10:30 p.m. Should further investigation reveal the potential relevance of the other requested recordings, Defendant may renew his motion for a Rule 17(c) subpoena at that time.

## II.     Passenger Manifest

The Government contends that the passenger manifest falls outside the scope of Rule 17(c) because it would not be used as evidence at trial. The Government argues that, as the purpose of the manifest would be to locate potential witnesses for the suppression hearing, Defendant is attempting to transform Rule 17(c) into a means of securing additional discovery, which is strictly contrary to the rule's purpose. In response to the Government's argument, Defendant offers a number of cases which suggest that in the context of subpoenas served on third parties, a less stringent standard should govern whether or not items are "evidentiary."

In *Nixon*, the Supreme Court set forth the requirements that a party seeking a subpoena duces tecum must meet before the subpoena may issue under Rule 17(c). Among these requirements is that the requested items be "evidentiary." *Nixon*, 419 U.S. at 699. In *United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006), the Tenth Circuit interpreted *Nixon's* evidentiary standard as requiring that a subpoena not issue under Rule 17(c) unless the movant can demonstrate that the subpoenaed item is relevant, admissible and specific. However,

*Abdush-Shakur* involved the issuance of a subpoena for documents in the Government's possession. The case did not address whether Rule 17(c)'s evidentiary requirement applies equally in cases where a subpoena duces tecum is issued to a third party. In fact, in *Nixon*, the Supreme Court expressly declined to decide whether the evidentiary requirement applies "in its full vigor . . . when the subpoena duces tecum is issued to third parties." 419 U.S. at 699 n.12.

A number of district courts have examined this question and adopted a less strict standard for the issuance of a subpoena duces tecum to a third party. In *United States v. Nosal*, --- F.R.D. ----, 2013 WL 782003 (N.D. Cal. Mar. 1, 2013), the District Court for the Northern District of California noted that in *Nixon*, the Supreme Court explicitly left this question unresolved. *Id*. at * 2 (citing *Nixon*, 418 U.S. at 699 n.12). The court agreed with the reasoning of a fellow district court that "[t]he notion that because Rule 16 provides for discovery, Rule 17(c) has no role in the discovery of documents can, of course, only apply to documents in the government's hands; accordingly, Rule 17(c) may well be a proper device for discovering documents in the hands of third parties." *Id*. at *3 (quoting *United States v. Tomison,* 969 F. Supp. 587, 593 n.14 (E.D. Cal. 1997)). The *Nosal* court adopted the reasoning of another district court that "[b]ecause the Rule states only that a court may quash a subpoena 'if compliance would be unreasonable or oppressive,' the judicial gloss that the material sought must be evidentiary – defined as relevant, admissible and specific – may be inappropriate in the context of a defense subpoena of documents from third parties." *Id*. at *3 (quoting *United States v. Nachamie,* 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000)). Accordingly, the court decided that the proper standard for a Rule 17(c) subpoena to a third party was simply "whether the subpoena was: (1) reasonable, construed using the general discovery notion of material to the defense; and (2) not unduly oppressive for the

producing party to respond." *Id*. at *4 (quoting *United States v. Rajaratnam,* 753 F. Supp. 2d 317, 320 (S.D.N.Y. 2011)).

The reasoning of these cases is persuasive: the limitations prescribed by Rule 17(c) and the case law interpreting it reflect the fact that Rule 16 governs discovery in criminal cases; however, Rule 16 provides no mechanism to inspect documents or other items that are not in the Government's possession. Additionally, this reading of Rule 17(c) is, in fact, consistent with Supreme Court precedent. In *Bowman Dairy*, where the Supreme Court first held that Rule 17(c) does not provide an additional means for discovery, the Court qualified this holding with the observation that the purpose of the rule is to "establish[] a more liberal policy for the production, inspection and use of materials at the trial." 341 U.S. at 220. In *Nixon*, the Supreme Court affirmed *Bowman Dairy's* liberal interpretation of Rule 17(c): "A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." 419 U.S. at 698. The Court then announced the requirement that the requested material be evidentiary, but explicitly declined to decide the extent to which the evidentiary standard applied in cases where the subpoenaed documents are in the hands of a third party. *Id*. at 699 n.12. To read Rule 17(c) with equal stringency with respect to third parties and the Government, would contravene the purpose of the rule's "more liberal policy." It would prevent criminal defendants from accessing evidence that is material to their defense, and it could even create a perverse incentive for the Government not to obtain potentially exculpatory material from third parties.

The Court finds that the standard applied in *Nosal* is appropriate for this case, which involves a subpoena duces tecum served upon Greyhound. The Court therefore analyzes whether the subpoena is: (1) reasonable, and (2) not unduly oppressive. *Nosal*, 2013 WL 782003 at *4.

As the Court understands it, the passenger manifest is a simple document listing the names and contact information of the passengers who were on board the bus in which Agent Perry encountered Defendant. Production of this document is therefore not oppressive. With respect to the reasonableness prong, the Court agrees with the Government that the passengers' privacy interests are a substantial concern that the Court must carefully weigh against Defendant's need for the manifest. However, the Court would note that the Government cited no case law or other authority to support its conclusory argument that the passengers' privacy interests demand that no subpoena for the manifest issue.

A handful of district courts have engaged in the calculus of balancing individual privacy interests against the need for evidence subject to a request for a subpoena duces tecum pursuant to Rule 17(c). However, these cases uniformly involved privacy interests that amounted to legally cognizable privileges. *See*, *e.g.*, *United States v. Shrader*, 2010 WL 2836752 (S.D.W.Va. 2010) (unpublished) (quashing subpoena for psychological treatment records of alleged victims); *United States v. Haworth,* 168 F.R.D. 660 (D.N.M. 1996) (holding that Defendants' Sixth Amendment right to confront did not entitle them to records concerning a witness protected by the psychotherapist-patient privilege); *cf. United States v. Mazzola,* 217 F.R.D. 84, 88 (D. Mass. 2003) (balancing right of "key government witness" to privacy of medical records against criminal defendant's need for evidence and refusing to quash subpoena in light of "great" evidentiary benefit of requested records). Here, the Government does not argue that any such privilege applies. The defense is simply requesting a list of passengers' names and contact information.

Because Agent Perry's tape recorder was turned off during his encounter with Defendant, eyewitness accounts could be crucial in resolving the credibility question the parties anticipate

will arise during the Court's resolution of Defendant's motion to suppress. These accounts could be of great value to the defense (or, indeed, to the Government), and the Court believes that this potential value outweighs the passengers' interest in protecting their basic personal information. Nonetheless, the Court respects the general privacy interests of innocent passengers who happened to be traveling on the bus on which Defendant was arrested for methamphetamine trafficking. The Court agrees with the Government that these individuals likely do not want their names and contact information in the hands of someone who has been accused of a serious drug offense. The Court shall therefore grant Defendant's motion, subject the Court's issuance of a protective order to be filed jointly by the parties.

## CONCLUSION

It is **HEREBY ORDERED** that Defendant's *Motion for Rule 17(c) Subpoena to the Custodian of Records for Greyhound Lines, Inc.* (Doc. 34) is:

**(1) GRANTED** with respect to his request for all on-board audio and/or video recordings from the eastbound Greyhound bus running route number 1342 during its layover in Albuquerque;

**(2) DENIED WITHOUT PREJUDICE** with respect to his request for all other recordings in Greyhound's possession; and

**(3) GRANTED** with respect to his request for the passenger manifest, subject to the entry of a protective order.

The parties are **HEREBY ORDERED** to jointly file a proposed protective order limiting the defense's use of the manifest to the investigation of potential eyewitnesses to the encounter between Defendant and Agent Perry and/or Agent Perry's subsequent search of Defendant's person and belongings. The order shall prohibit defense counsel from sharing the information

contained in the passenger manifest with anyone – including Defendant himself – other than defense attorneys and/or investigators who are conducting this limited investigation. The parties shall file said proposed order no later than **seven (7) days** following entry of this order.

Defendant is **HEREBY ORDERED** to prepare a subpoena and submit it to the Court no later than **seven (7) days** following entry of this order.

Dated this 26th day of April, 2013.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorney for Plaintiff:*
Paul Mysliwiec

*Attorneys for Defendant:*
Peter Schoenberg
Marc Lowry