IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                                                                                  No.  13-CR-663-MV

MATTHEW I. GROBSTEIN,

       Defendant.

**<u>DEFENDANT'S RESPONSE TO THE UNITED STATES' NOTICE TO THE COURT</u>**

**I.     Introduction**

On April 30, 2013, the United States, through Assistant United States Attorney Paul Mysliwiec, filed a "Notice." The Government's "Notice" is wrong on the facts and misunderstands the applicable law. The Notice purports to alert this Court to the "secret process" counsel developed in order to "subvert the Court's order and intentionally avoid[] the Court's review." (Doc. 41, at p. 3). This is an unfounded proposition, considering that before the Notice and this Court's *Memorandum Opinion and Order*, (Doc. 40), undersigned counsel made abundantly clear his intent to pursue the requested materials through a 17(c) subpoena *and* a corrected trial subpoena. Undersigned counsel indicated the following in *Defendant Grobstein's Response to United States' Motion to Quash Subpoena* (Doc. 36):

> Inadvertently, the trial subpoena was issued, confusingly, returnable to both counsel's office and the Aspen Courtroom. The intent was to issue a trial subpoena returnable to the Court.  **<u>Defendant intends to pursue the same materials from Greyhound through his requested Fed. R. Crim. 17(c) subpoena duces tecum (Doc. 34), opposed by the Government (Doc. 35), and a properly framed trial subpoena duces tecum.  This response is not intended to compromise those efforts in any way.</u>**  It is instead an acknowledgment of a typographical error in the drafting of the April 3, 2013 trial subpoena.

(emphasis added)

That same day, as the above pleading indicated, counsel sent a corrected trial subpoena with a cover letter to Greyhound's Records Custodian.  (Attached hereto as "Exhibit A")  The cover letter included with the subpoena indicates that Greyhound should "disregard the two previous subpoenas," and reflected the new trial date of June 17, 2013.  The letter indicated that once counsel reviewed the information Greyhound said it would provide, counsel would "in all likelihood, be able to release a Greyhound records custodian from actually appearing at trial."  *See id.*   The trial subpoena ordered a records custodian to appear at the "Courtroom of Martha Vazquez," in "Santiago E. Campos U.S. Courthouse, 106 South Federal Place," and listed the date and time of the currently scheduled trial.  *See id*.

## II. The issuance of trial subpoenas, unlike Rule 17(c) subpoenas for pretrial production, does not require notice to opposing counsel or leave of court.

Unlike a Rule 17(c) subpoena for the pretrial production of documents, which arguably may require the requesting party to provide notice to opposing counsel,[1] a trial subpoena, or a subpoena for attendance at an evidentiary hearing, does not require notice to opposing counsel.  *See United States v. Florack*, 838 F. Supp. 77, 78 (WDNY 1993)("Rule 17(a) requires that the subpoena state the court and title of the proceeding and command the person 'to attend and give testimony at the time and place specified therein.'  Obviously, under the

---

[1]     *Compare United States v. Urlacher*, 136 F.R.D. 550, 552 (W.D.N.Y. 1991)("Rule17(c), however, simply does not support an *ex parte* application for such a subpoena, and the defendant has provided no other reason why the court should grant his request without benefit of notice to others involved."), *with United States v. Beckford*, 964 F.Supp. 1010, 1029 (E.D. Va.1997)(identifying that "[t]he textual rationale" that *ex parte* procedure is unavailable under rule 17(c) "is not persuasive . . . because the text of the rule neither permits nor forecloses the employment of ex parte process").

above procedure, leave of court is not required and no notice need be given to the Government.").

"A subpoena is issued by the clerk of the court as a matter of course upon the request of a party." J. Moore, Moore's Federal Practice § 617.03, at 617-8 to 617-9 (3d ed. 2011). Commentators have noted that "[l]eave of court is not ordinarily required for issuance of a subpoena duces tecum, except for a subpoena to a third party for personal or confidential information about a victim." 2 C. Wright & P. Henning, Federal Practice & Procedure, § 275, at 262 (4th ed. 2009). Although the filing of motions for rule 17(c) subpoenas is considered "an orderly and desirable procedure and one frequently followed, . . . the rule does not require it." 2 C. Wright & P. Henning, supra § 275, at 261. Additionally, the words "motion" or "move" do not even appear in rule 17 except in reference to the filing of motions to modify or quash subpoenas.

In federal court, trial witness lists and trial subpoenas are not exchanged or disclosed to opposing parties. This is the reason why Rule 17 contains a provision allowing indigent defendants to request free process *ex parte* for the issuance of subpoenas. See Rule 17(b)(stating that "upon a defendant's ex parte application, the court must order that a subpoena be issued . . . .")(emphasis added). In fact, case law discussing the effect of the 1966 Amendment to Rule 17, which changed the application process for indigent defendants to obtain subpoenas to allow the filing of an *ex parte* application, highlights the essential notion that subpoenas should generally issue without notice to opposing counsel in order to "shield defendants from premature disclosure of their evidence." See *Florack*, 838 F. Supp. at 79. In *Florack*, the court identified that:

3

> A criminal defendant's right to subpoena and present witnesses and evidence rests not only on Rule 17(b), but also on the Fifth Amendment right not to be subject to disabilities by the criminal justice system because of financial status. Therefore to conclude that Rules 17(a) and 17(c) permit an individual of financial means to subpoena both witnesses and documents without notice to the Government, while Rules 17(b) and 17(c) only allow an indigent defendant to subpoena witnesses, would result in a disability based on financial status in violation of the Fifth Amendment.

838 F. Supp. at 79 (internal quotation marks and citation omitted). While, unlike *Florack*, Mr. Grobstein's subpoenas were not issued under 17(b), this case identifies the practice, in light of the above policy considerations, that a criminal defendant should, as a general matter, be able to issue subpoenas without notice to the Government.  It is common practice to issue subpoenas duces tecum and, if disclosure is made <u>voluntarily</u> before the identified proceeding and a records custodian is not required to authenticate, release the records custodian from appearing at trial.

### III. The United States does not have standing to oppose subpoenas to third parties like Greyhound, Inc.[2]

The Government was not acting on behalf of Greyhound when it moved to quash Mr. Grobstein's first trial subpoena and opposed his motion for a Rule 17(c) subpoena. Greyhound was apparently never consulted on this matter; instead the Government's objection appears to be no more than an obstructionist and brazen effort to deprive Mr. Grobstein of evidence he needs to prepare a defense to his criminal charges.

The Government does not have standing to challenge the voluntary disclosure of records by a third party to Mr. Grobstein as it has no privacy or possessory interest in the records, and it has not asserted any valid evidentiary privilege which would apply to the

---

[2] This argument would have been included in Mr. Grobstein's Reply, had not the Court's Order, (Doc. 40), issued first on April 26, 2013.

materials. *See United States v. Gonzales*, 2010 WL 3853324, at * 2 (D. Colo. 2010)(unreported). The *Gonzales* opinion noted that:

> A party only has standing to move to quash the subpoena issued to another when the subpoena infringes upon the movant's legitimate interests. The government will often lack standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest in the subpoenaed material, or some other interest in the subpoenaed material. In the instant case, beyond stating that the subpoenas subvert the discovery mechanisms defined by Fed.R.Crim.P. 16, case law from the Supreme Court and the Tenth Circuit, and this action's Discovery Memorandum and Order, the Government fails to show that the subpoenas are unreasonable or oppressive, **as applied to the Government.**

Gonzales, 2010 WL 3853324, at * 2 (internal quotation marks, citation, and alterations omitted) (emphasis in original); *E.g.*, *United States v. Idema*, 118 Fed.Appx. 740, 744 (4th Cir. 2005)("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena. [The defendant] has failed to make any showing that he has a personal right to, or privilege in, the information being sought in the subpoenas. Thus, he lacks standing to contest whether the subpoenas were properly issued, and we dismiss this portion of his appeal.")(internal citation omitted).

The information Mr. Grobstein requested belonged to an independent third party. The Government cannot make the argument that the request for information at issue from Greyhound is oppressive or overly broad when the Government does not carry the burden of production. In contrast, Greyhound was able and willing to provide the requested materials to undersigned counsel with great ease and in a timely fashion.

**IV.    Greyhound's practice is to destroy surveillance footage seven days after its recording and Mr. Grobstein's independent efforts to preserve the evidence**

5

      **through the issuance of a trial subpoena and request for pretrial production under Rule 17(c) was necessary and appropriate.**

Greyhound representatives have in the past informed investigators from the Federal Defender's Office that the company practice is to destroy recorded surveillance seven days after its recording. In an abundance of caution, believing both the surveillance footage and passenger information to be essential to Mr. Grobstein's defense and knowing that Greyhound keeps such materials only for a short period of time, counsel took the approach of issuing both a trial subpoena duces tecum and a Rule 17(c) subpoena for pretrial production. This approach was necessary to preserve the evidence, as neither the government nor Greyhound had a duty secure or preserve the evidence prior to issuance of a subpoena for the information. *See, e.g.*, *United States v. Bobadilla-Lopez*, 954 F.2d 519, 522 (9th Cir. 1992) (holding that the government has no obligation under the Jencks Act to preserve surveillance observations, as opposed to investigative witness interviews "intended to form the basis for evidence at trial.").

Mr. Grobstein informed counsel that he believes the DEA Agents were on the bus when it returned from cleaning and refueling, before any passengers had re-boarded the bus. Seeing no legitimate reason for this, and knowing that the bus receives layover servicing in a cleaning bay directly south of the Greyhound station, counsel needed all surveillance footage of the cleaning bay and surrounding area that night in order to ascertain if, when, and where DEA Agents boarded the bus.

Such objective evidence is essential in a case where the character and veracity of the investigating agent, in this case SA Jarrell Perry, has been seriously questioned in the past.

*See United States v. Aispuro*, 453 Fed. Appx. 795, at n. 1 (10th Cir. 2011) (not selected for publication in the Federal Reporter) (discussing Agent Perry, and noting that the Court of Appeals for the Tenth Circuit has "previously raised serious questions about his veracity"). Before reviewing the cleaning bay footage, disclosed by Greyhound, undersigned counsel, through independent investigation, discovered that on a night after Mr. Grobstein's arrest, on the same eastbound bus, DEA Agents conducted exploratory searches of the luggage compartments under bus while the bus was being serviced in the cleaning bay. DEA Agents spent extended periods of time ducking inside of the compartments with flashlights, shuffling around luggage, if not also squeezing, pressing, and even opening the luggage.

   Upon receipt of the surveillance footage that Greyhound disclosed from the night of Mr. Grobstein's arrest, undersigned counsel viewed the DEA Agents who arrested Mr. Grobstein inside of the cleaning bay conducting exploratory squeezes of passenger luggage stored underneath the bus. The agents were applying pressure and manipulating the contents of bags presumably to detect drugs inside of the luggage. The surveillance footage also shows the DEA Agents repeatedly boarding the bus while in the cleaning bay, and empty of all of its passengers, where they remain alone with the bus door closed for an extended period of time while Greyhound employees clean the exterior of the bus. This occurred well before the supposedly random "consensual encounter" with Mr. Grobstein which led to his arrest. Although Greyhound has indicated that the bus itself does not contain surveillance cameras, considering what the DEA Agents felt comfortable doing in the presence of Greyhound employees working on the bus, there is no reason to believe that squeezing and

7

feeling of the bags left inside of the passenger compartment, if not full searches of passenger luggage, also occurred during this time.

**V.      Counsel intended to articulate the specific need for the off-bus surveillance video in Mr. Grobstein's Reply to the *United States' Opposition to Defendant's Motion for a Rule 17(c) Subpoena to Greyhound Lines, Inc*. (Doc. 35), but the Court's swift Order prevented a timely reply.**

In response to the Government's argument that the request for materials in Mr. Grobstein's Motion for Rule 17(c) was overly broad, counsel planned to articulate the demonstrated need for the various surveillance footage requested, as well as argue against the Government's standing to make objections to Greyhound's third-party disclosure in the first place.  As identified above, counsel had ample reason to believe that DEA agents were conducting business in or around the cleaning bay south of the Greyhound station.  Counsel intended to file a Reply the beginning of the week following the Court's issuance of the *Memorandum Opinion and Order*, on April 30, 2013, which he had time to do under D.N.M.LR-Cr 47.8. (stating that a "reply must be served within fourteen (14) days after service of the response. . . . Whenever service is made in the manner provided under Federal Rule of Criminal Procedure 5(b)(2)(C), (D), (E), (F) and 5(b)(3), three (3) days are added after the period would otherwise expire under Federal Rule of Criminal Procedure 45(a)").

Greyhound voluntarily disclosed the materials requested to be produced at trial through a trial subpoena.  As a result, the Rule 17(c) request for pretrial production is now moot.  Counsel received the materials on April 23, 2013, and reviewed them the following day, April 24, 2013.  Counsel then left for an out-of-state vacation, and planned to file a timely Reply notifying the Court of the receipt of the requested materials, which rendered the

request for Rule 17(c) subpoena moot, upon his return the following week.  However, the Court issued its *Memorandum Opinion and Order* on Friday, April 26th, (Doc. 40), before counsel was able to file a Reply.  The above information is reflected in the proposed order counsel drafted prior to the Government's entry of the present "Notice."  (Proposed order attached hereto as "Exhibit B").  Defendant Grobstein proposes that this order be entered.  The Government opposes the order, objecting to the words "voluntarily relinquished" in Paragraph 2, as reflected in an April 30, 2013 email to counsel.  Although the materials, including the passenger manifest and surveillance video, were voluntarily turned over by Greyhound, Mr. Grobstein does not object to the confidentiality provisions contained in the proposed order.  (*See* Exhibit B).

WHEREFORE, for the reasons discussed above, Mr. Grobstein requests the Court enter the attached proposed order denying his Motion for Rule 17(c) subpoena as moot, and providing for confidentiality protections concerning the passenger manifest.

Respectfully Submitted,

ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM, SCHOENBURG & BIENVENU, LLP


 /s/  *Peter Schoenburg*
Peter Schoenburg
Marc Lowry
500 4th Street NW, Suite 400
Albuquerque, NM 87102
(505) 243-1443
*Attorneys for Matthew Isaac Grobstein*

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 2nd day of May, 2013 I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    Paul Mysliwiec
    Assistant United States Attorney

    /s/  *Peter Schoenburg*
    ROTHSTEIN, DONATELLI, HUGHES,
    DAHLSTROM, SCHOENBURG & BIENVENU, LLP